IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DARRELL L. BRIGHT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW SAUL, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | 1:19CV504 |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff brought this action to obtain review of a final decision of the Commissioner of Social Security[1] denying his claim for a period of disability and disability insurance benefits. The Court has before it the certified administrative record (Docket Entry 8) and cross-motions for judgment on the pleadings (Docket Entries 12, 16).

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance benefits on September 29, 2017, alleging a disability onset date of September 1, 2017. (Tr. 194-197.) The claim was denied initially and upon reconsideration. (Tr. 10, 93-96, 102-108.) Plaintiff

---

[1] Andrew Saul was confirmed as the Commissioner of Social Security on June 4, 2019 and was sworn in on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Act. 42 U.S.C. § 405(g).

requested a hearing before an Administrative Law Judge ("ALJ"), which he attended on October 24, 2018 with his attorney and a vocational expert. (Tr. 110-111, 32-69.) In his December 4, 2018 decision, the ALJ determined that Plaintiff was not disabled. (Tr. 10-22.) On March 8, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of review. (Tr. 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established five-step sequential analysis to ascertain whether Plaintiff is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] The ALJ initially determined that Plaintiff met

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [his] past relevant work; and (5) if not, could

2

the insured status requirements through December 31, 2022. (Tr. 12.) The ALJ then determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 1, 2017. (*Id.*) The ALJ next found the following severe impairments at step two: sleep apnea, posttraumatic stress disorder ("PTSD"), and alcohol use disorder. (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listing. (Tr. 13.) The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he could perform medium work with the following limitations:

> his work is limited to simple, routine and repetitive tasks, but not at a production rate; simple work-related decisions; and occasional interaction with the public, co-workers and supervisors. He would be off-task no more than 10 percent of the time in an eight-hour workday, in addition to normal breaks (with normal breaks defined as a 10-15 minute morning and afternoon break and a 30-minute lunch break).

(Tr. 14.)

At the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 20.) Last, at step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform. (Tr. 21.) Consequently, the ALJ concluded that Plaintiff was not disabled. (Tr. 22.)

---

perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

**IV. ISSUES AND ANALYSIS**

Plaintiff contends that the ALJ erred in (1) failing to adequately assess the medical evaluations of Dr. Lekisha Alesii and Dr. Julia Messer and (2) failing to explain the reasons for not giving significant weight to Plaintiff's Veterans Affairs ("VA") disability rating. (Docket Entry 14 at 4-10.) For the following reasons, neither of these contentions has merit, and the Commissioner's final decision should be upheld.

**A. Opinion Evidence**

Plaintiff first contends that the ALJ failed to properly assess the medical evaluations of Drs. Alesii and Messer. (Docket Entry 14 at 4-8.) This argument is without merit.

As a threshold issue, the Court notes that Plaintiff filed his application on September 29, 2017. (Tr. 194-197.) For applications filed on or after March 27, 2017, the SSA has fundamentally changed how adjudicators assess opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).[3]

The longstanding requirements calling for adjudicators to weigh medical opinions and give special deference to treating source opinions have changed. *See* 20 C.F.R. § 404.1520c(a) (effective March 27, 2017). Now, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."[4] *Id.* Nevertheless, an ALJ must

---

[3] To the extent Plaintiff suggests that case law requires the ALJ to provide additional explanation about the VA disability decision or the medical opinions, or that the ALJ had to "weigh" the opinions in a manner that deviates from the current regulations, he is incorrect to rely upon it.

[4] The new regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of

4

consider and articulate in the administrative decision how persuasive he or she finds each medical opinion or prior medical finding in a claimant's case record. *See id.* § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). When a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings as a class. *See id.* § 404.1520c(b)(1). In doing so, the ALJ is "not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

In evaluating persuasiveness, the ALJ must articulate two factors: supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. *Id.* § 404.1520c(c)(1); *see also Revisions to Rules*, 82 Fed. Reg. at 5853 (defining supportability as "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation"). Consistency is an external check that references evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2); *see also Revisions to Rules*, 82 Fed. Reg. at 5853 (defining consistency as "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim"). The ALJ must only address the three other persuasiveness factors—relationship with the claimant, specialization, and the catchall "other factors"—when two or more medical

---

work activity or adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2) (2017). The new regulations also define a "finding . . . about a medical issue made by . . . Federal and State agency medical and psychological consultants at a prior level of review" as "[p]rior administrative medical finding." *Id.* § 404.1513(a)(5).

5

opinions, or prior administrative medical findings about the same issue, are equally persuasive in terms of supportability and consistency. *Id.* §§ 404.1520c(b)(3), 404.1520c(c)(3)-(5).

### i. Dr. Lekisha Alesii

Plaintiff contends that the ALJ did not properly evaluate Dr. Alesii's medical opinion. (Docket Entry 14 at 4-8.) This argument is without merit.

On September 6, 2017, soon after Plaintiff's alleged onset date of September 1, 2017, Dr. Alesii conducted a one-time Compensation and Pension Examination of Plaintiff as part of his application for disability benefits to the U.S. Department of Veterans Affairs. (Tr. 375-381.) The ALJ cited to the new regulation, 20 C.F.R. § 404.1520c, and performed a lengthy analysis of Dr. Alesii's examination as follows:

> Lekisha Alesii, Ph.D., indicated during a Compensation and Pension Examination in September 2017 that the claimant appeared to have limitations in job-related duties as it pertained to his PTSD diagnosis. His symptoms included intrusive thoughts, distressing dreams/nightmares, flashbacks, psychological and physiological distress to triggers of trauma, avoidance of thoughts and external reminders of trauma, emotional numbness, detachment from others, persistent and exaggerated negative beliefs, distorted cognitions surrounding the trauma, persistent negative emotional state, irritability/anger, hypervigilance, and exaggerated startle response. He also reported having a depressed mood, feelings of worthlessness and hopelessness, fatigue, difficulty concentrating, anhedonia, guilt, and a sleep disturbance. (Ex. 2F).
>
> He appeared to be moderately limited in his ability to understand, remember, and carry out detailed instructions due to distractions from PTSD symptoms (such as flashbacks, intrusive thoughts, hypervigilance, difficulty concentrating). The claimant also appeared to be markedly impaired in his ability to complete a normal workday and workweek without interruption from psychologically based symptoms (due to problems with re-experiencing trauma, avoidance reactions, and hyperarousal). He appeared to have a marked impairment in responding

> appropriately to changes and stressors in a work setting (due to irritability/anger, excessive worry, exaggerated startle response, hyperarousal, and unprovoked irritability with periods of violence). The claimant appeared to have marked limitations in his ability to relate to others, including supervisors and coworkers (due to suspiciousness, irritability/anger, avoidance of crowds, and difficulty in social interactions as evidenced by problems in his interactions with his ex-wife and people in public with whom he became angry). Based upon the examination, the claimant needed to seek follow up treatment. He required individual psychotherapy and medication management. (Ex. 2F).
>
> This opinion is not persuasive because the marked limitations given to the claimant by Dr. Alesii are not supported by her own interview notes, which indicate the claimant arrived early for his appointment; was dressed casually with adequate hygiene; was very personable and talkative; had behavior within normal limits; had mildly anxious affect at times, but was mostly euthymic; had speech within normal limits; was jovial and cooperative; had good insight; had adequate judgment; was very forthcoming with information; had good concentration; was attentive; was alert and oriented x 3; had no overt signs of psychotic symptoms; had adequate memory; and had no thoughts of suicide or homicide. Her marked limitations are also not consistent with the overall evidence of record. While the claimant stated that he avoided public interactions and large crowds, he was able to live with his fiancée and stepson without significant difficulties. He also indicated that he did not have a problem getting along with co-workers and was able to go to church if he sat in the back or to restaurants as long as he faced the door. He stated that he was able to go to the grocery store in the early mornings, as well as go to places where Help Wanted signs were posted. Claimant's mental status exams were mostly normal, with limited mental health treatment during the period at issue and many missed appointments. (Ex. lF, 2F, 3F, and 4F).

(Tr. 14, 18-19, 375-381.)

The ALJ's assessment of Dr. Alesii's medical opinion as unpersuasive is both legally correct and supported by substantial evidence. First, the ALJ properly discounted Dr. Alesii's conclusion that Plaintiff was markedly impaired in his ability to complete a normal workday

7

and workweek due to the severity of his psychological symptoms. The ALJ correctly pointed out that this determination was not supported by Dr. Alesii's own interview notes. (Tr. 19.) For example, Dr. Alesii noted that Plaintiff arrived early for his appointment. (Tr. 18, 380.) He showed both good insight and adequate judgment. (*Id.*) He had good concentration and adequate memory, was attentive, and had both speech and behavior within normal limits. (*Id.*) Further, he showed no signs of psychotic symptoms. (*Id.*) Each of these characteristics affirm rather than undermine his ability to complete a normal workweek.

Also, as the ALJ accurately noted, Dr. Alesii's determination is not consistent with the overall evidence of record. Dr. Alesii based her conclusion on Plaintiff's problems with re-experiencing trauma, avoidance reactions, and hyperarousal, but as the ALJ also accurately pointed out, Plaintiff had mostly normal mental status exams, sought out limited treatment,[5] and missed many appointments. (*See, e.g.*, Tr. 19, 319, 320, 321, 328, 336, 354, 380.) By making certain adjustments, Plaintiff was able to attend church, go to restaurants, and shop at the grocery store.[6] (Tr. 19, 58, 61, 348.) He was also able to drive himself around town looking for work. (Tr. 19, 343.) Therefore, the record contradicts Dr. Alesii's conclusion that Plaintiff had a marked limitation in his ability to complete a normal workweek. The ALJ properly found this determination unpersuasive.

---

[5] For instance, during the seventeen-month period between February 2016 and July 2017, Plaintiff was "lost to mental health follow up." (Tr. 848.)

[6] At his hearing, Plaintiff also said that he attended his stepson's middle school track meets because he could "deal with" smaller crowds. (Tr. 58.) This admission is not consistent with the severity of Dr. Alesii's conclusion as to Plaintiff's social limitations. (Tr. 381.)

8

Second, the ALJ correctly discounted Dr. Alesii's conclusion that Plaintiff was markedly impaired in his ability to respond appropriately to changes and stressors at work. Again, the ALJ pointed to portions of Dr. Alesii's interview notes that contradict rather than support this finding. (Tr. 18-19.) While Plaintiff was mildly anxious at times during the interview, he was "mostly euthymic" rather than excessively worried. (Tr. 18, 380.) Rather than exhibiting irritability or anger, Plaintiff was "jovial and cooperative." (*Id.*) Again, Dr. Alesii found Plaintiff's speech and behavior to be within normal limits. (*Id.*) These observations do not support her conclusion that Plaintiff would be unable to respond appropriately to stressors. Further, as the ALJ points out, this conclusion is inconsistent with the overall record. As noted above, Plaintiff's mental status exams were mostly normal, he sought out limited mental health treatment, and he also missed many scheduled appointments. (*See, e.g.*, Tr. 19, 319, 320, 321, 328, 336, 354, 380.)

Third, the ALJ appropriately discounted Dr. Alesii's determination that Plaintiff was markedly impaired in his ability to relate to others, including his supervisors and coworkers. Again, this finding is not supported by Dr. Alesii's own interview notes. (Tr. 19.) For example, Dr. Alesii found Plaintiff "very personable and talkative." (Tr. 18, 380.) She also found him "jovial and cooperative" and "very forthcoming with information." (*Id.*) The ALJ also accurately observed that Dr. Alesii's conclusion that Plaintiff had marked limitations in his ability to relate to others was inconsistent with the overall record. Specifically, the ALJ accurately observed that Plaintiff was able to live with his fiancé (now wife) and his stepson without significant difficulties, that he did not have a problem getting along with his coworkers, and that he could go to the grocery store in the morning, seek out Help Wanted

9

signs, sit in the back at church, and go to restaurants if he could face the exit. (Tr. 19, 40, 50, 52-53, 58, 60-61, 348, 849, 853.) The ALJ's conclusion as to Dr. Alesii's opinion was legally correct and supported by substantial evidence. He articulated his analysis of both relevant factors (supportability and consistency) in his persuasiveness analysis. Plaintiff's arguments to the contrary are unpersuasive, and this argument fails.

### ii. Dr. Julia Messer

Plaintiff also contends that the ALJ failed to properly evaluate Dr. Messer's medical evaluation. (Docket Entry 14 at 4, 7-8.) Through the Durham VA Medical Center, Dr. Messer performed a psychiatry consultation on Plaintiff on August 16, 2017, a few weeks before Plaintiff saw Dr. Alesii and a few weeks before his alleged onset of disability. (Tr. 847-864.) In her report, Dr. Messer stated that Plaintiff's "psychiatric symptoms appear to be moderately to severely impacting his level of functioning at this time." (Tr. 849.) Dr. Messer then summarized Plaintiff's social functioning, describing the details of his "conflictual relationship with his ex-wife," his avoidance of public gatherings, and "altercation[s]" related to sporting events he attended or participated in. (*Id.*) However, Dr. Messer also noted his "current romantic relationship [w]as stable and supportive," that he got "along well with his fiancé's son," that he had "a close relationship with his mother," and that "he spends time with her and several uncles." (*Id.*)

Regarding Plaintiff's occupational functioning, Dr. Messer noted that Plaintiff was not working, that he was terminated in 2016 from an IT help desk company, and that he had been terminated from multiple IT jobs previously due to his irritability, attitude, short temper, and lack of patience. (*Id.*) Dr. Messer also pointed out that Plaintiff noted problems related to

10

having a criminal record, which prevented him from obtaining new employment. (*Id.*) Dr. Messer then concluded that regarding his current mental health symptoms, "it is possible that symptoms of alcohol use disorder and posttraumatic stress disorder could moderately to severely impact his ability to complete work-related tasks and maintain effective interpersonal relationships." (*Id.*) However, Dr. Messer concluded that "[a] job involving independence and limited interactions with others would likely minimize the impact of his symptoms on his occupational functioning." (*Id.*)

Although the ALJ never mentioned Dr. Messer's name, he did specifically point to her evaluation, along with other opinions from VA mental health providers. The ALJ concluded that Dr. Messer's opinion was "persuasive" because it was "supported by personal examination and a review of the claimant's medical history, [and was] consistent with the overall medical and other evidence of record," which the ALJ had described earlier in his decision (and much of which the undersigned has summarized above). (Tr. 20 referencing Tr. 337-353, 847-864.) In assessing Dr. Messer's evaluation, the ALJ therefore considered both its supportability and consistency.

The ALJ accordingly accommodated Plaintiff's symptoms by "limiting him to medium, unskilled, non-production rate pace work, with social interaction restrictions and an allowance for time off task." (Tr. 19; *see also* Tr. 14.) Beyond this, at Plaintiff's administrative hearing, a vocational expert testified (and in reliance on this, the ALJ concluded) that an individual with these limitations could not perform Plaintiff's past relevant work as a technical support specialist, but could perform other jobs in the national economy, such as laundry worker, cleaner, and hand packager. (Tr. 20-21, 65-67.)

11

Plaintiff now contends that "Dr. Messer's conclusion regarding the severity of Mr. Bright's mental impairments is essentially the same [as] Dr. Alesii's, therefore, if the ALJ found Dr. Messer's evaluation and opinion persuasive, it follows that he should have found Dr. Alesii's persuasive as well. Therefore, the ALJ's explanations are incomplete, and his findings are contradictory." (Docket Entry 14 at 7-8.) But Dr. Messer's findings were **not** "essentially the same" as Dr. Alesii's. As explained, Dr. Messer concluded that while it was "possible" that Plaintiff's symptoms of alcohol use disorder and posttraumatic stress disorder could impact his ability to complete work-related tasks and maintain effective interpersonal relationships, "[a] job involving independence and limited interactions with others would likely minimize the impact of his symptoms on his occupational functioning." (Tr. 849.) The ALJ then incorporated Dr. Messer's proposed limitations into his RFC finding. (Tr. 19; *see also* Tr. 14.)

Dr. Alesii, on the other hand, concluded that Plaintiff had marked (and potentially work preclusive) limitations in his ability to function, but unlike Dr. Messer did not address whether these limitations could be accommodated. (Tr. 381.) However, as demonstrated above, the ALJ provided good reasons in explaining why Plaintiff's limitations were not as severe as Dr. Alesii found them to be.

Finally, state agency psychologists reviewing Plaintiff's claim for benefits in October of 2017 and November of 2017 (including both Drs. Messer's and Alesii's findings), opined that Plaintiff retained the mental RFC to perform simple, routine, repetitive tasks in a stable, low-stress setting with limited social demands. (Tr. 72-74, 84-86.) The ALJ's assessment of Drs. Alesii and Messer is also supported by these prior administrative medical findings, rendered by highly qualified experts in Social Security disability evaluation. 20 C.F.R. §

12

Case 1:19-cv-00504-TDS-JLW   Document 18   Filed 08/04/20   Page 12 of 15

404.1513a(b)(1) (2017). The ALJ, consistent with the regulations, found these prior administrative medical findings persuasive, citing the psychologists' "thorough review of the available evidence" with "detailed explanations" (*i.e.*, supportability) and the fact that the findings were "consistent with the objective medical evidence and other evidence of record, as described above" (*i.e.*, consistency). (Tr. 19-20.) Plaintiff has not disputed the ALJ's analysis of these two doctors, and their prior administrative medical findings lend further support to the ALJ's analysis of Drs. Alesii and Messer.

### B. VA Disability Determination

Plaintiff next contends that the ALJ "erred in failing to explain the reasons for not giving significant weight to [Plaintiff's] disability rating from the VA." (Docket Entry 14 at 8.) However, Plaintiff relies upon case law and regulations that no longer apply in cases such as this one. Therefore, Plaintiff's argument has no merit.

Effective March 27, 2017, the most recent version of 20 C.F.R. § 404.1504 modified the duties of the ALJ with respect to disability determinations by other agencies. The regulation now states:

> Other governmental agencies and non-governmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make disability, blindness, employ-ability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a non-governmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, *we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity*

13

> *about whether you are disabled*, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504 (emphasis added). Under these regulations, the ALJ is expressly no longer required to provide "any analysis" in his decision about a disability decision made by any other governmental agency, including the Department of Veterans Affairs. However, the ALJ retains a duty to consider the record underlying a VA disability rating. *Id.*

Here, the ALJ expressly discussed the VA's disability determination in his decision:

> Documents from the Department of Veterans Affairs (VA) indicated that the claimant's PTSD resulted in a 70 percent service-connected disability; he was being paid at the 100 percent rate because he was unemployable due to his disabilities; and he was considered to be totally and permanently disabled (Ex. 9E, 12E, 13E, 15E, and l7E).

(Tr. 19.)

The ALJ also clearly considered the record underlying the VA's disability rating. The VA included a list of the evidence it relied upon as part of its decision. (Tr. 292-293.) One of the listed pieces of evidence was a "VA contract examination, dated September 6, 2017." (Tr. 293.) This referenced examination was that of Dr. Alesii, who produced her opinion as part of Plaintiff's application for VA disability benefits. (Tr. 375.) As discussed above, the ALJ included an extensive analysis of Dr. Alesii's opinion in his decision, thus meeting his burden to consider the record underlying the VA's disability rating. The ALJ also considered the remainder of the administrative record, including Dr. Messer's opinion. (Tr. 23-26.) Thus, the ALJ's consideration of Plaintiff's VA disability rating is legally correct and supported by

14

substantial evidence. Plaintiff's argument to the contrary is without merit and should be rejected.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 12) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be **GRANTED**, and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

August 4, 2020
Durham, North Carolina

15

Case 1:19-cv-00504-TDS-JLW   Document 18   Filed 08/04/20   Page 15 of 15